## STATE EX REL. EVERETT BAUM v. SOLDIERS BONUS BOARD.[1]

June 22, 1923.

No. 23,122.

**Relator entitled to bonus.**

> One who temporarily resided in this state when the call came to register under the Selective Service Act, who in obedience thereto registered here, who thereafter left the state, but returned at the call of the draft board and was inducted into the military forces as a part of the quota raised from the residents of this state, and who was honorably discharged, is entitled to a bonus under chapter 49, Sp. Sess. 1919, as amended by chapter 471, Laws 1921.

Upon the relation of Everett Baum the supreme court granted its writ of certiorari directed to the Soldiers Bonus Board to review its action in denying relator a soldier's bonus. Reversed and remanded.

*Todd, Fosnes & Sterling*, for relator.

*Clifford L. Hilton*, Attorney General, and *Albert F. Pratt*, Assistant Attorney General, for respondent.

HOLT, J.

Relator was born in Pennsylvania. He came to this state, May 2, 1917, to look for work. While working in Minneapolis he registered under the Selective Service Act, giving a certain number on Hennepin Avenue as his residence or address. In January, 1918, he quit his job "by request," and then left for the state of Oregon to look for work. He found employment in the shipyards there and in Seattle, Washington. Evidently the call from the draft board in Minneapolis reached him, for he returned to Minneapolis, and was inducted into the military service July 26, 1918. A year later he was honorably discharged. When he applied for a bonus he gave

[1]Reported in 194 N. W. 320.

his place of residence when inducted as Jasper, Minnesota. This mistake evidently arose from the fact that he was working at Jasper when he signed the application, and gave his then residence instead of the one at the time of his induction into the army. His application was denied. The bonus board was of the opinion that "at the time of his entry into the service he resided in the state of Minnesota only temporarily; that he was not a bona fide resident of this state," and he was so notified.

When relator came to this state he was barely of age. It appears that he was in the same situation as, perhaps, the great majority of the young men are when leaving the parental home. He had to go where he could find work in order to live. Existence then comes first, and the place of residence is the place of work. In that position one cannot well choose a permanent place of abode, or even form an intention as to what state is, or will be, his "bona fide" residence. As the Selective Service Act was administered, he was registered as a resident in this state for duties under that law. In obedience thereto he gave his address in Minneapolis, the place where he then was earning a living and necessarily must abide. When he was let out of his job, he sought work in a distant state, but promptly returned at the call of the draft board to fill the quota which this state was called upon to supply to the United States military forces from its residents. It would almost seem that the state ought not now to be heard denying his being a resident, for, when the President called upon the state to furnish its quota of soldiers from its residents, relator was asked to become and willingly became one of them. We think the board applied a wrong construction to the bonus act when holding that none but "bona fide" residents, that is, persons who had acquired a permanent residence or home in this state, could receive the bonus granted by Laws 1919 (Sp. Sess.) p. 72, c. 49, as amended by Laws 1921, p. 774, c. 471. Our conclusion is that the legislature intended to give a bonus to every soldier who registered for the draft in this state and who, when called to serve, obeyed without objection, and willingly served until honorably discharged. Thereby he helped to fill the quota which it was the duty of the state to send from its residents, and

thus proved his residence in this state. The bonus is not made to depend upon citizenship. Only the alien who claimed exemption because of his alienage is excluded. Laws 1919 (Sp. Sess.) c. 49, as amended by Laws 1921, c. 471, § 1. Therefore, the immigrant from Europe, on his way to seek a home in some other state or country, who stopped in this state and registered for the draft and who, when called, entered the service, was included in this bonus grant. The board applied an erroneous interpretation to the word soldier in the bonus acts.

The findings of the board are reversed and the cause is remanded to the adjutant general for further action in harmony herewith.